# CLEALAND v. WALKER.

1. As a general rule where a written contract is entered into by an agent with a third person, to bind the principal and make it his act, it must purport on its face to be his contract; but it cannot be assumed as a *legal conclusion* from the fact, that the principal has no middle name—merely subscribing himself *David Walker*, that a promissory note subscribed "David S. Walker," by his son and agent who uses the initial *S.*, was accepted by the payees as the personal undertaking of the agent, and that the credit was given to him; but the *prima facie* intendment in favor of the principal may be repelled by proof.

2. The ratification of a contract when fairly made, will bind the principal in respect to the agent and third persons in the same manner as if the agent had noted under a previous authority. But this rule has its exceptions; thus if one was to say that he authorised another person to purchase property and furnished the means of paying for it, this would not bind the principal to pay, if the agent had converted the money; but if the money was returned by the agent, or the purchase made on a credit and the money furnished by the principal, he would be bound if the agent did not apply it.

3. For the purpose of showing that a note was intended to bind the agent and not the principal, whose name is similar, it is allowable for the principal in an action against him, to prove that a suit had been brought and prosecuted to judgment against the agent; but the effect of this evidence may be impaired by proof, that, that suit was brought by mistake.

4. Where the name of the principal is not disclosed by the agent when the contract is made, it is said that the creditor may change either of them at

his election; and although he may have debited the agent, supposing him to be the principal, he may recover the amount of the latter, if the account between the principal and agent is not altered to the prejudice of the former. But if the vendor, with a knowledge of who the principal is, makes the agent his debtor, he is bound by the election, and can't look to the principal for payment.

5. Where there is testimony tending to establish a particular result, a prayer for instructions affirming an admitted legal proposition, and which involves the consideration of this testimony, cannot be denied, on the ground that it is abstract, because the evidence is not such as should convince the jury.

6. Where a charge conforms to the law, and is authorized by the evidence, it should be given in the terms in which it is asked, though it may be necessary for the court to give additional or explanatory instructions; and the error of a refusal, cannot be repaired by giving another charge, which when critically examined, will be found to lay down *substantially* the same principle.

Writ of Error to the Circuit Court of Talladega.

THIS was an action of assumpsit on a promissory note, tried by a jury who returned a verdict for the defendant, on which judgment was rendered. From a bill of exceptions sealed at the plaintiff's instance, it appears that he introduced as a witness, one of the payees of the note declared on, who testified that it was given for a barouche purchased by David S. Walker, the son of the defendant; that the son represented himself as the duly authorized agent of his father. Proof was adduced tending to show that the son was agent, both at the time of the purchase of the barouche and the making of the note. The note, with its indorsement, &c. was then offered, and are as follows: " $510. Wetumpka, March 24, 1837. Nine months after date I promise to pay to the order of Nickles, Poor & Hall, five hundred and ten dollars, value received.          (Signed) ·

DAVID S. WALKER."

No.     living at        ⎫
Due        Talladega, Ala. ⎭

This note was indorsed in blank by the payees. It was proved by the same witness that the barouche was purchased on the credit of the defendant, and the note was received by the payees as his undertaking to pay. Afterwards, the de-

fendant had the barouche in his possession, and within six years previous to the commencement of this action, acknowledged that the debt was just, and that his son had had defendant's funds to pay the same.

David S. Walker, the son, was then introduced as a witness for the defendant, who stated that the barouche was purchased by him on his own account, and the note in question given by him and received by the payees as his individual liability; that the barouche had been left by him in the possession of the defendant while he was absent from the state. Evidence was also adduced tending to prove that the acknowledgment of the debt to which plaintiff's witness referred, was made under the impression and belief that the barouche, which had not been paid for, was another which the defendant's son had purchased for him.

The defendant then produced the record of a recovery by one Gilbert Clealand, previous to the commencement of this suit, against David S. Walker, as the maker of the note now sought to be recovered. This record was offered in connection with evidence tending to show that the plaintiff in that record and in this suit was the same individual. To the introduction of this record the plaintiff objected, but the objection was overruled, and the evidence permitted to go to the jury: thereupon the plaintiff excepted.

Plaintiff then offered evidence tending to show that David S. Walker had been sued by mistake, and that no satisfaction had been had from the recovery as aforesaid: *Further*, that David S. Walker, when he gave the note, represented the name subscribed thereto to be the defendant's. Upon this point the testimony was contradictory.

The plaintiff prayed the court to charge the jury—1. If they believed the note sued on was given for the price of a barouche, that David S. Walker had authority to purchase the same for the defendant on a credit, that he did purchase the same as the agent of the defendant, and gave the note sued on, representing the name signed to it, to be the defendant's, and it was received by the payees as the note of the defendant, then in law it was the defendant's note.

2. If David S. Walker bought the barouche for the defendant and as his agent, and the credit was intended to be

given to the defendant, and the note was received on his undertaking to pay, under the belief that the initial of his middle name was S.; and the defendant afterwards received the barouche and acknowledged the authority of the agent to give a note for the price, then this would be the defendant's note, although the agent may have fraudulently intended to sign his own name instead of his principal's, if the payees did not participate in the fraud.

These charges the court refused to give, and instructed the jury, that, if David S. Walker had authority from defendant to purchase the barouche, and did make the purchase for him, and on his credit, and gave the note sued on therefor, intending the signature thereto as the defendant's name, then in law, the note would be the undertaking of the defendant. To the refusals to charge the jury as prayed, the plaintiff excepted.

W. P. CHILTON and S. F. RICE, for the plaintiff in error, contended that if David S. Walker was the agent of the defendant, his acts and declarations at the time the contract was made constituted a part of the *res gesta,* and are binding upon the principal.. [2 Phil. Ev. C. & H's Notes, 181; 5 Binn. Rep. 195; 2 Root Rep. 30, 150; 11 Verm. Rep. 477; 3 Ala. Rep. 534; 8 Ala. Rep. 821.] As a general rule, perhaps the agency of a party who signs a paper should appear upon its face; but this rule is subject to various exceptions. [Story on Prom. Notes, § 70; Story on Ag. § 147, 161; 3 Chit. on Com. & Man. 193, 210, 211; 1 Richardson's Rep. 255; Fortune v. Brazier, at this term.] The subsequent ratification of the act of an agent, by his principal, as the acknowledgement of the debt for which the note is given, will make the note the principal's. [2 Stew. Rep. 479; 2 Ala. Rep. 725; Story on Ag. § 239.]

The suit which was brought against David S. Walker, if induced as it doubtless was, by his false representation, does not estop the plaintiff from suing the defendant. [21 Maine's Rep. 308; 9 B. & Cresw. Rep. 78.] Where an agent purchases on behalf of another person, whose name he conceals, the principal, when discovered, may be sued. [1 Ala. Rep. 301.] And on the other hand, either agent or principal in

Clealand v. Walker.

such case may sue for the breach of the contract. [1 Cow. Rep. 192; 7 Wend. Rep. 172; 9 Verm. Rep. 407.] The defendant appointed his son his agent, received the property he purchased, and must pay for it, though his son abused the confidence reposed in him, or did not act strictly in accordance with the authority conferred. [3 Hill's Rep. 262; 5 Dana Rep. 449.]

F. W. Bowdon, for the defendant in error. The note is made in the name of the son—the defendant's name no where appears on it, and it cannot be made the foundation of an action against him. [48 Law Lib. 78, 79, 250-1-2; Story on Ag. § 155, 157, 161; 9 Co. Rep. 76; 3 Wash. C. C. R. 565; 16 Mass. Rep. 42; 1 Paine's Rep. 252; 15 Mass. Rep. 340, 344; 11 Id. 27; 10 Wend. R. 271; 6 Hill's Rep. 318.] If one assumes to act as agent without authority, he makes himself personally liable, if the note which he gives contain apt words to charge him. *Surplusage* may be stricken out, but *names* or words cannot be inserted, so as to make a new contract. [Story on Prom. Notes, 75, and note; 2 Greenl. Rep. 14, 358; 13 Johns. Rep. 307.] So, if a person without authority sign the name of another to a note, and receive the consideration, he is not liable on the note; but in an action on the case for the deceit, or in assumpsit for the price of the goods. [Chit. on Bills, 35, 36; 2 Kent's Com. 631-2, 12 Mass. Rep. 173; 11 Id. 97; 16 Id. 462; Am. Jurist, No. 41, p. 19; 3 B. & A. Rep. 114; 4 Car. & P. Rep. 121; 9 N. H. Rep. 263; 11 Sergt. & R. 129; 2 Ala. 725.]

The principal is not bound by the act of his special agent, unless the authority is strictly pursued. [9 Por. 210; 1 Brev. Rep. 490; 3 Call, 207; 8 Wend. 494.] In the present case, the proof is deficient in not showing that the defendant was not known as well by the name of David S. as David Walker. [Willes' Rep. 554; Dyer's Rep. 279, a.; 1 Greenl. Ev. 78, and note 3; 3 Taunt. Rep. 504; Cro. Eliz. Rep. 897; Cro. Jac. Rep. 558, 640.]

The record of the suit against David S. Walker, shows that the credit was given to him, or at least that the plaintiff had the right to sue either him or the defendant, and had made an election which estops him. [2 Phil. Ev. C. & H's Notes,

Clealand v. Walker.

82, 84, 823; 4 Johns. Rep. 464; 1 Pick. Rep. 62; 1 Ala. R. 299; 2 Id. 725.]

If the law were as supposed by the plaintiff, still the charges should not be given as prayed; and the court was not bound to reform them. [9 Porter, 330.] The evidence shows that the defendant acknowledged the *debt*, and the court was asked to charge as to the ratification of the *note*.

COLLIER, C. J.—It is certainly correct as a general rule, that where a written contract is entered into by an agent with a third person, in order to bind the principal and make it his act, it must purport on its face to be his contract. [Story on Ag. § 147 to 161.]

The ratification of a contract when fairly made, will have the same effect as an original authority to bind the principal not only in regard to the agent himself, but in respect to third persons. If therefore an agent has made a contract, without authority for his principal, or beyond his authority, and it is afterwards ratified, the principal may generally sue and be sued thereon, in the same manner, and with the same effect as if he had originally given the authority. *Omnes ratihabitio retrotrahitur, et mandato priori æqui paratur.* [Story on Ag. § 244 to 246.] This rule is subject to many exceptions, where the ratification would be inoperative to divest a right or impose a legal obligation. Thus, if one was to say that he authorized another person to purchase property, and furnished him the money to pay for it at the time, this would not bind the principal to pay for it, if the agent had converted the money. But if the money was returned to him, or the purchase made on a credit, and the principal afterwards furnishes the means of payment, he would be bound for the faithlessness of the agent in not applying them.

It cannot be assumed as a legal conclusion from the fact that the defendant has no middle name indicated by the initial S, and his son and supposed agent thus writes his name, that the payees gave credit to the latter, and accepted his individual note as evidence of his personal liability. Where the plaintiff declared by the name of William *T.* Robinson, and gave in evidence a deed to William Robinson, the insertion of the initial of a middle name was deemed an immate-

rial variance ; for the law knows of but one christian name.
[Franklin v. Talmage, 5 Johns. Red. 84.] In Keene v.
Meade, 3 Pet. R. 6, a commission issued in the name of Rich-
ard *M.* Meade, though his true name was Richard *W.*
The court said, " it may well be questioned whether the mid-
dle letter of a name forms any part of the christian name of a
party. It is said the law knows only of one christian name ;
and there are adjudged cases strongly countenancing, if not
fully establishing, that the entire omission of a middle letter
is not a misnomer or a variance." [See also Willes' R. 559.]
These citations are quite sufficient to show, that subscribing
the name of the maker of the note David S. is not conclusive
that the defendant, David, who had no middle name was not
intended. Even conceding that it was *prima facie* the note
of the son, and yet the presumption may be rebutted by
proof that the note was in fact made by him as the agent of
the defendant, or accepted by the payees as imposing a lia-
bility upon the defendant. This point was expressly so rul-
ed in Allen v. Brockway, et al. 17 Wend. Rep. 40. See also,
8 Cow. Rep. 31 ; 5 Wheat. Rep. 326 ; 2 Ala. 718 ; 4 Ala. R.
198.

For the purpose of showing that the note declared on was
received as the personal liability of the son, it was competent
for the defendant to prove by the record that a suit had been
brought thereon, and prosecuted to judgment against the son.
Whether this evidence would have been sufficient in itself
to establish the fact, or that the holder of the note had elect-
ed to consider the son his debtor, we need not inquire. How-
ever this may be, it was clearly competent for the plaintiff
to show that that suit was prosecuted against the son by mis-
take, and thus impair or destroy the effect which the record
might otherwise have.

In Thompson v. Davenport, 9 B. & C. Rep. 78, it was de-
cided that the principal may be liable, and also the agent,
and *vice versa*, where the principal was not disclosed, so that
it could not be inferred that there was not an election. So
if a person sells goods, supposing he is dealing with the prin-

cipal, but afterwards discovers that the person with whom he dealt is not the principal in the transaction, but merely an agent, he may recover the amount of the principal, though he had debited the agent : *Provided,* the state of the account between the principal and agent, is not altered to the prejudice of the former. But if the vendor knows that the person he is dealing with is an agent, and who the principal is, and notwithstanding makes the agent his debtor, he cannot, upon the agent's failure, charge the principal ; because, when he had the power to do so, he made his election. [15 East, 62 ; 4 Taunt. 574 ; 21 Maine Rep. 308 ; Story on Ag. 297, 298,]

Though the evidence may have been contradictory as to the fact of David S. Walker's agency, or as to the credit being given to the defendant, or of the acceptance of the note by the payee, as a promise by him, or of the subsequent ratification of the transaction by the defendant, yet there was certainly testimony directly to these points.

From this view of the law and the evidence, it is perfectly clear that the first charge prayed should have been given. It merely asked the court to direct the jury, that if they believed the note sued on was given for the price of a barouche which David S. Walker was authorised to purchase for the defendant, on a credit, that he represented the name signed to it, to be the name of the defendant, and that it was received by the payees as the note of the latter, then in law the defendant was liable to pay it.

The second prayer for instructions, requested the court to instruct the jury, that if David S. W. purchased the barouche for the defendant, as his agent ; that the credit was intended to be given to the defendant, and the note received as his undertaking to pay, under the belief that he had a middle name, the initial of which was S., that the defendant afterwards received the barouche, and acknowledged the authority of the agent to give a note for the price, then the note would bind the defendant; although the agent may have fraudulently intended to sign his own name : *Provided,* the

134

payees did not participate in the fraud. This prayer assumed, that in addition to the purchase by the son, as the agent, and the giving and receiving the note as the written promise of the defendant to pay, the jury should be satisfied that the latter also received the barouche, and acknowledged the authority of the agent to give a note for the amount. The first part of the prayer was confessedly warranted by the evidence, and there was certainly testimony tending to show that the transaction was approved by the defendant. Whether sufficient to convince a jury is quite immaterial—it was doubtless their duty to consider it, and either party might pray the direction of the court in respect to it. It is objected that the evidence upon this point was, that the defendant had *acknowledged the debt for the barouche was just*, and that David S. W. had had funds in his hands to pay it. Whether the admission extended to the note was a question of fact, for the solution of the jury—it would be too much to assume, that it referred to the contract merely, independent of the note. It cannot then with propriety be concluded, that the charge asked in respect to the ratification or adoption of the note was abstract, and was rightly denied for that cause.

Where a charge conforms to the law, and is authorized by the evidence adduced, it should be given in the terms in which it is asked, though it may be proper for the court to give additional or explanatory instructions. The error of a refusal cannot be repaired by giving another charge, which, when critically scanned, will be found to lay down substantially the same principle.

What has been said, will sufficiently indicate the error of the circuit court. It remains but to add, that its judgment is reversed, and the cause remanded.