## AMARIAH A. TAFT *vs.* LOVELL BAKER.

In an action for the price of goods sold on the defendant's credit to his agent, in which the defendant contended that the purchase of goods on credit was not within the scope of the agency, the judge instructed the jury that, to return a verdict for the defendant, they must find not only that the agency was so limited in fact, but also that "the plaintiff was informed, or had reason to believe, by the acts and declarations of the defendant," that it was so limited. *Held*, that the instruction was erroneous in leaving the jury without any guide to a proper conclusion in the absence of any such acts or declarations proved to their satisfaction.

In an action for the price of goods sold on the defendant's credit to his agent, in which the defendant contends that the purchase of goods on credit was not within the scope of the agency, evidence is admissible to show that the agent was always in funds, either from the business itself which was the subject of the agency, or from the defendant, sufficient to pay cash for all his purchases.

CONTRACT on an account annexed for balances due on exchanges of horses, carriages, sleighs and harnesses, and for the price of horses and hay bought, all in the year 1865 ; with a count on promissory notes dated in 1865 and signed " S. W·

Howe, Agt.," for amounts corresponding with the items of the account. Answer, a general denial of each and every allegation of the plaintiff. At the trial in the superior court, before *Rockwell*, J., the jury found for the plaintiff; and the judge allowed the following bill of exceptions :

" The plaintiff offered evidence tending to show that he made the trades mentioned in his account annexed with Stedman W. Howe, believing him to be the agent of the defendant; that he gave the defendant credit and not Howe ; and also that Howe was the defendant's agent to make said contracts.

" Evidence was introduced by the defendant tending to show that Howe kept a livery stable in Milford during the year 1862 in what was called the Mansion House stable, and that the defendant held a mortgage of his livery stock ; that Howe sold his stock and interest in that stable in the early part of 1863, and at the time of such sale the defendant discharged the mortgage and note he held against Howe and took a mortgage of the same property from the purchasers; that in the spring of 1863 Howe made a bargain with Gamaliel N. Hayward for a livery stable and stock in Milford, called the Central Street stable, and after he made the bargain applied to the defendant to assist him in paying for the property purchased, and proposed at first to give the defendant a mortgage of the property to secure his advances, but that finally, at the request of Howe and for his accommodation, it was agreed that the defendant should take the bill of sale of the property, and that the property should continue to be his until Howe paid him a stipulated price therefor, and that Howe in the mean time should carry on the business of the stable, manage it as he would if the property was his own, and might sell and exchange the horses and carriages from time to time as the business of the stable might require, keeping the defendant all the while secure, that is, keeping the property in the stable of a value equal to the amount he was to pay the defendant for it before it should become the property of Howe; and that Howe continued the business under this arrangement for three years.

" The plaintiff contended that Howe was the defendant's gen-

eral agent for carrying on the livery business at that stable, and had unlimited authority to sell the defendant's property in that stable, and exchange and buy other property for the stable on the credit of the defendant; and that the defendant held out Howe as his general agent with authority to buy and exchange property on the defendant's credit, which was known to the plaintiff and acted on by him in giving credit; and to support this claim he introduced evidence as to declarations made by the defendant respecting the extent of Howe's agency, and that the defendant had paid bills contracted by Howe for grain used in the stable, and had on one or more occasions furnished Howe with money to pay the exchange on horses; and against the objection of the defendant he was allowed to introduce evidence that Howe had placed, with the knowledge of the defendant, a sign over the entrance to the stable bearing the words ' S. W. Howe, Agent.'

" The defendant contended that he had conferred on Howe only a limited agency, giving him only authority to sell and exchange the property of the stable, but that Howe had no right or authority whatever to use the credit of the defendant in buy-ing or exchanging property; denied having made the declarations imputed to him as to the extent of Howe's agency, but claimed to have declared the agency a limited one as before stated; also denied that he had any pecuniary interest in the livery business, and that Howe was in any manner his agent in carrying on the business, it being exclusively Howe's own business; and offered evidence to show that Howe had used the same sign at the Mansion House stable and was not then the agent of the defendant but was acting as the agent of another person.

" The plaintiff did not claim to hold the defendant under any special or limited agency to buy or exchange property, but did claim he was liable under a general agency existing or held out as aforesaid.

" The defendant offered evidence to show that Howe was at all times in funds furnished directly by the defendant or from the proceeds of the business of the stable, sufficient to pay for

all horses or other property bought or changed by him for the stable, and that there was no time when it was necessary for him to use the credit of the defendant in making purchases or exchanges to keep the property in the stable at its original value; which evidence, upon the objection of the plaintiff, was rejected by the court. He also offered to show that the plaintiff took and received from Howe the notes declared on in his second count, in payment of the sums sought to be recovered; which evidence was objected to by the plaintiff and ruled out. And he offered to prove, from the books kept by Howe during all the time he occupied the Central Street stable and by other competent evidence, that the receipts from the daily earnings of the stable, and from the sales and exchanges of the stock in the stable made by Howe from time to time, were sufficient to pay all the current expenses of the stable and keep the stock up to its original value, and also to pay Howe a fair profit or liberal compensation for his own time and labor devoted to the business; which evidence also upon the plaintiff's objection was rejected by the court.

" At the close of the testimony, the defendant asked the judge to instruct the jury as follows : 1. If the jury upon the evidence should believe that the defendant authorized Howe to buy and exchange property for him, that would not of itself authorize them to find that he gave Howe the right to buy and exchange on the credit of the defendant. 2. The proof that the defendant authorized Howe to buy and exchange property does not authorize the jury to find that Howe had the right to buy and exchange upon the defendant's credit, unless the plaintiff also proves that the defendant did not furnish him with the means to pay for the property bought and exchanged for. 3. If Howe's agency was a limited one, then it was the duty of the plaintiff to ascertain what those limitations were, and if the plaintiff traded with Howe without ascertaining the extent of Howe's authority, and Howe exceeded the limits of his powers as the agent of the defendant in his trade with the plaintiff, the defendant is not bound by such unauthorized acts of his agent. 4. If the jury should find that the defendant did authorize Howe to buy and

exchange property on his account, yet, if the defendant furnished Howe the means to pay for property so bought and exchanged for, either in money or the income from other property of the defendant intrusted to said Howe, sufficient to pay for such property as he bought or obtained by exchange, then the defendant cannot be held liable for the price of property so bought and exchanged for, unless express authority is proved to have been given to said Howe by the defendant to pledge his credit for such price and sums agreed to be given on exchange of property. 5. If the defendant gave Howe authority to exchange property from the stable for such other property as the latter might think fit, of which there was some evidence, and such authority was given at the request of said Howe and for his benefit, of which there was also evidence, such authority would not confer upon Howe the right to pledge the credit of the defendant for any differences that Howe agreed to pay on such exchanges, and if the exchanges made with the plaintiff were made under such authority the defendant would not be liable to the plaintiff for the sums Howe agreed to pay him on the exchanges."

The judge refused to rule as requested; and instructed the jury as follows : " The plaintiff sues to recover on five items, balances in trades of livery property, arising from swaps or exchanges, and for two sales, one of a horse and the other of some hay, on the ground that the bargains were made with the defendant through Stedman W. Howe, the defendant's agent. To sustain his action, he must prove affirmatively, upon the whole evidence, that Howe was the agent of the defendant to make the bargains. To sustain this position he has introduced evidence of the acts and declarations of the defendant in connection with, or in relation to, the property of the Central Street stable in Milford. The defendant denies the agency, and has introduced testimony to sustain his position. An important part of the testimony upon which the plaintiff relies to prove the agency consists of the statements of the defendant. If the jury are satisfied upon the whole evidence that Howe was the agent of the defendant, at the time of these bargains, to exchange the livery property, to sell property of the stable, and to buy property

for the stable, and that the plaintiff, at the time the bargains were made, knew or had reasonable cause to believe that Howe was the defendant's agent to that extent, the plaintiff has a right to recover upon all the items in his account annexed. If he was agent to make exchanges, and to contract to pay balances by way of boot, he may recover on those five items; and if he was agent to buy property for the stable he may recover for the other two items. The theory of the defendant is, that the property was his to the extent of Howe's indebtedness to him; that it was his, the defendant's property, and to remain his property unless and until Howe paid for it; and Howe had the right to pay the agreed price, which was, the amount of said indebtedness with interest, and have the property; that he authorized Howe to exchange property from time to time, but not to create a money debt, in any way, either by exchanges or by purchases; that there was an agency, but thus limited. The important question is, Was the agency thus limited? If it was thus limited, Howe had not the right, as between him and the defendant, to bind the defendant to pay the items declared on. But the plaintiff claims to recover upon the two grounds, that Howe was actually the defendant's agent, and that the plaintiff knew it or had reasonable cause to believe it. In this case, as the agency to the above limited extent is admitted, if the jury are satisfied from the whole evidence that by the acts and declarations of the defendant the plaintiff was informed or had reasonable cause to believe that the agency was not limited, and had acted in these bargains upon that belief, upon the belief that the agency was general, as to this property, he may recover, although as between the defendant and Howe there was this limitation. But if the jury are satisfied upon the whole evidence that by the acts and declarations of the defendant the agency was thus limited, and that the plaintiff was informed or had reason to believe by the acts and declarations of the defendant that there was an agency, but thus limited, the plaintiff cannot recover." The judge further instructed the jury "that they were not authorized to infer a general agency from the proofs offered of a special agency; and that in this case, under the pleadings, the notes were not a bar to the plaintiff's recovery."

*P. E. Aldrich & G. F. Verry,* for the defendant.

*G. F. Hoar & T. G. Kent,* (*H. B. Staples* with them,) for the plaintiff.

WELLS, J.  The judge at the trial rightly instructed the jury that, "to sustain his action, the plaintiff must prove affirmatively, upon the whole evidence, that Howe was the agent of the defendant to make the bargains." This must include also the element of the credit of the defendant. It was not denied that Howe had authority to sell property belonging to the livery stable; to purchase other property in its place; and to make exchanges of property; keeping up the value of the whole stock. The controversy was chiefly as to his authority to use the credit of Baker in such transactions and for the business of the livery stable. This question had two aspects; one as to his actual authority from Baker; the other as to his apparent authority. If he had actual authority to make the contracts upon the behalf and credit of Baker, and did so make them, the defendant would be liable, whether the plaintiff knew of such authority or not. If his authority was limited and did not include the right to use the credit of Baker, still if Baker had, by his conduct, held him out as having such authority, or had, by his acts, declarations, or silence, given reasonable cause to the plaintiff to believe that Howe had authority to use his credit in making contracts for the business of the livery stable, the defendant might be held liable in contracts so made. These are simple propositions, which would be readily apprehended by a jury, and, if stated separately, could lead to no confusion or misunderstanding.

It is difficult to extract the precise meaning from the complicated instructions, the report of which we find in this bill of exceptions. There is nowhere an accurate and clear statement of either ground of liability. Towards the close we find one sentence containing a statement substantially of the second proposition above laid down, which, if it stood alone, would have been sufficiently accurate. But the next sentence, which purports to give the converse of that proposition, requires that the jury should be satisfied, in order to return a verdict for the

defendant, not only that the agency was limited in fact, but also that " the plaintiff was informed, or had reason to believe, by the acts and declarations of the defendant," that the agency was thus limited.    In the absence of any such acts and declarations, proved to their satisfaction, from which the plaintiff could be held to have information or reason for belief upon the subject, the jury were left without any guide to a proper conclusion. They would be liable to take the last proposition given to them from the bench, as a proper one to determine the question of liability; and, if so, they might return a verdict for the plaintiff without any proof whatever that the defendant had held out the alleged agent as having authority to use his credit in making exchanges and purchases.

It is unnecessary to point out, more in detail, the defective features of these instructions.    Aside from errors in law, they fail to present to the jury, in any intelligible form, the questions upon which they were to pass.

The exclusion of testimony offered to show that Howe was at all times in funds, furnished directly from the defendant, or from the proceeds of the business, sufficient to pay for all exchanges and purchases made by him, without using the credit of the defendant, was erroneous.    One of the questions in issue was, whether Howe had, in fact, authority to use the credit of Baker.    If he was authorized to exchange and purchase property for Baker, and had no means of payment, the inference of authority to purchase upon credit of his principal would be much stronger than if he were supplied with all necessary funds for the purpose.    The evidence was competent for this purpose, and upon this question.    It would not, of course, affect the question of liability for having held out Howe as the agent of the defendant, with apparent authority to use his credit.

*Exceptions sustained.*