## SOLON S. LAING, RESPONDENT, v. CHARLES S. BUTLER AND NATHANIEL F. T. HAYDEN, APPELLANTS.

*Principal and agent — when the principal is not liable for the price of goods purchased by his agent on credit.*

Where a principal has placed in the hands of his agent money wherewith to purchase goods for the principal, and the agent, without disclosing his agency, purchases goods for the principal on credit in his own name, the principal is not liable to the person selling the goods for the price thereof.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee in Cattaraugus county.

*Frank W. Stevens*, for the appellants.

*W. G. Laidlaw*, for the respondent.

HAIGHT, J.:

This action was brought to recover the sum of $867.23, being the contract price of a quantity of hides sold by the plaintiff to Edward F. Smith. The hides when delivered to Smith were not paid for, but it was understood that he should give two checks on the banking office of Amos Dow, and that they should be held for a few days before presentation for payment. The checks when presented were not paid, and subsequently this action was brought. The evidence fully sustains the findings of fact by the referee.

The referee has found that the hides in question were purchased by Smith at East Randolph, N. Y., under and in pursuance of a written agreement with the defendants, of which the following is a copy:

"ALBANY, N. Y., *February* 17, 1882.

" It is hereby agreed between Butler, Hayden & Co., of Boston, Mass., and E. F. Smith, of East Randolph, N. Y., that said Smith shall buy for said Butler, Hayden & Co., not exceeding fifteen thousand slaughter country-hides per year, and not exceeding sixty thousand calf skins, in hair, per year, mostly deacon skins, at the lowest prices possible, and tan them into rough leather in a reasonable time and in a workmanlike manner, at his tannery in East Randolph, N. Y., and at the tannery at Union, Pa. (all the skins to be tanned at East Randolph, and as many of the hides as possible also, the balance of the hides at Union), and forward the same to Butler, Hayden & Co., Boston, Mass. The said Butler, Hayden & Co. are to furnish the money needed to buy the hides and skins. They are to sell the leather and skins in rough when tanned and received by them, and after deducting from the amount of the sales the money furnished, with interest at six per cent per annum, a commission of five per cent on the amount of sales, the transportation, insurance and incidental expenses, then the balance shall be the compensation of said Smith for buying the hides and skins and tanning the same, and the deficiency, if any, shall be paid to said Butler, Hayden & Co. by said Smith. Said Smith is to bear all risk of loss by fire, water or otherwise. Invoices of hides and skins bought to be sent B., H. & Co., as fast as possible. It is understood and agreed that this contract covers all hides and skins tanned by said Smith at East Randolph, N. Y., and Union city, Pa., during its continuance. This contract is for two years, from April 1, 1882 (that being the date of the termination of the Butler, Dunn & Co. contract), it being understood that Mr. Smith may commence buying hides and skins at once under this contract. It being also understood and agreed that if said Smith concludes to build (as he intends to do the coming summer) a new tannery at or near Corydon, Pa., of a capacity not exceeding one thousand hides per week, said Butler, Hayden & Co shall stock it also on same terms and conditions ; it being also

understood that if this new tannery is built the tanning at Union, Pa., will cease. It being understood that the title to all stock bought under this contract is to be in said Butler, Hayden & Co.

"Witness our hands and seals.

"BUTLER, HAYDEN & CO.    [L. S.]

[L. S.]"

That the defendants supplied Smith with $65,000 for the purpose of buying hides and skins, pursuant to the written contract, and that the sum so furnished to Smith was largely in excess of the sum expended by him for that purpose; that the hides purchased by Smith were in fact purchased by him as the agent of the defendants, and were received by them; that at the time of the sale and delivery of the hides by the plaintiff he was ignorant of the fact that they were purchased for the defendants, and did not know of the existence of the written agreement, nor of the relations of Smith to the defendants. Upon these facts the referee has held that the plaintiff is entitled to recover, and from the judgment entered upon his report this appeal was taken.

It is apparent, from an inspection of the written agreement between the defendants and Smith, that he was constituted their agent to purchase hides, and that the title of the hides, as soon as purchased, vested in the defendants; that the defendants were to furnish Smith with the money needed to buy the hides. Nothing is said in the contract as to whether the hides should be purchased for cash or upon credit, but inasmuch as the undisputed evidence shows that the defendants advanced the money before the purchase, the conclusion is irresistible that it was the understanding that the purchase should be for cash. It is contended in the first place that the written agreement constituted Smith a general agent of the defendants; but whether he was a general or special agent we have not thought it necessary to determine, for in the view that we take of the case it becomes immaterial. The question is therefore presented, whether or not the plaintiff can recover of the principal for goods sold to an agent, when the sale is made to the agent and the credit given to him without knowledge that he is purchasing for a principal, when the principal has already furnished the agent with the money with which to make the purchase. We have carefully

examined all of the authorities cited by the respondent and the learned referee bearing upon the question, and fail to find any that sustain the proposition contended for. They are either cases in which the agent, at the time of making the purchase, disclosed the fact that he was purchasing for a principal, or cases in which the agent was authorized by the principal to purchase upon credit and then make payment to the agent after the disclosure of such agency. The rule is stated by the learned referee to be elementary, that if the agent buys in his own name, but for the benefit of his principal and without disclosing his name, the principal is also bound as well as the agent, provided the goods come to his use, or the agent acted in the business intrusted to him according to his power. This is the general rule so far as stated; it, however, has limitations and exceptions which we shall notice farther on. It will be observed, however, in the rule as stated, that the principal will be held, provided the agent acted in the business intrusted to him *according to his power.* In the case of a general agent with the agency disclosed, the person dealing with him has the right to assume that his acts, within the general scope of the business intrusted to him, are authorized by his principal, and the dealer has the right to rely upon such assumption. The reason for this rule is obvious. It is for the protection of the dealer from being deceived as to the precise authority of the agent where the means are not at hand to ascertain and determine his true and precise authority; but no such reason exists in the case where the agreement is made with an agent who does not disclose his agency; in that case the contract is made with the agent individually. The agent is bound by his acts as if he were principal. Credit, if given, is given to the agent. There is no opportunity to deceive the dealer as to his precise authority, for the reason that no agency is claimed. If the agent discloses the fact that he is acting for a principal, naming the principal for whom he is acting, then the agent personally is not bound; if credit is given, the person giving it must look to the principal. If the principal is not disclosed at the time of the contract by the agent, and it is subsequently ascertained that he was acting as agent, then the seller may look either to the principal or agent, but in order to hold the principal under such circumstances, it must be shown that the agent acted *accord-*

*ing to his authority*, or that his acts had been subsequently ratified and confirmed.

In Dunlap's Paley on Agency (246) it is said: " The broker may buy in his own name without disclosing his principal, in which case the invoices will of course be made out to him and he will be debited with the account. If now, before payment, the seller discover that the purchase was in fact made for another, he may, at his choice, look for payment either to the broker or the principal; to the former upon his personal contract, to the latter upon the contract of his agent, and the adoption of the purchase by the principal will be evidence of the agent's authority. But if after the disclosure of the principal the seller lie by and suffer the principal to settle in account with his broker for the amount of the purchase, he cannot afterwards charge the latter so as to make him a loser, but will be deemed to have elected the broker for his debtor."

And again at page 250 he says: " It is a general principle that if the creditor voluntarily give an enlarged credit to the agent of the debtor, or adopt a particular mode of payment whereby the principal is placed in a worse situation than he would otherwise have been, the liability of the original debtor is discharged; and therefore if a creditor voluntarily, and for his own accommodation, take a security from an agent of the debtor who afterwards fails, having in his hands funds of his principal adequate to the payment of the demand, he cannot afterwards resort to the principal."

And, again, at page 245: " Servants to whom money is paid in advance to purchase goods with, and who, notwithstanding, are allowed by the sellers to deal upon credit; in such cases the credit itself being unauthorized by the masters, they are not liable; but if the master justify the credit given to the servant at all, he is not then discharged by paying the price to the servant if the latter omit to pay it over to the creditor."

Story on Agency (at sec. 291) says: " When, therefore, the agent acts without disclosing that he is acting as an agent; or when acting as a known agent he does not disclose the name of his principal there; although credit is given to the agent, yet it is not deemed to be an exclusive credit. On the contrary, when the principal is discovered, he also will be deemed responsible as well as the agent. There is this qualification, however, annexed to such

liability of the principal, that nothing has in the meantime passed between the principal and the agent to alter the state of their accounts or otherwise to operate injuriously to the principal if he has acted in the confidence that exclusive credit was given to the agent, and, moreover, that there has been no laches on the part of the creditor." 1 Parsons on Contracts (p. 63) says : "An undisclosed principal, subsequently discovered, may be made liable on such contract, but, in general, subject to the qualification that the state of the account between the principal and agent is not altered to the detriment of the principal," and so on.

In the case of *Armstrong* v. *Stokes* (L. R., 7 Q. B. Cases, 598) it was held that a vendor who has given credit to an agent, believing him to be the principal, cannot recover against the undisclosed principal if the principal has *bona fide* paid the agent at the time when the vendor still gave credit to the agent and knew of no one else as principal. We are aware that this case was criticised by the learned referee, and the case of *Irvine* v. *Watson* (L. R., 5 Q. B. Div., 102) was cited approvingly. But in this case the agent disclosed the fact that he wanted the property for " a principal in the country," thus giving the seller the right to rely upon the principal for payment. BOWEN, J., in delivering the opinion of the court, cites approvingly the principle decided in the case of *Armstrong* v. *Stokes*, and makes the disclosing of the purchase for a principal a fact distinguishing the case. This case was affirmed on appeal. (L. R., 5 Q. B. Div., 414.) In the case of *Davidson* v. *Donaldson* (L. R., 9 Q. B. Div., 623), decided in 1882, the doctrine of *Armstrong* v. *Stokes* is again asserted. In the case of *Clealand* v. *Walker* (11 Ala., 1058), COLLIER, Ch. J., in delivering the opinion of the court, says : " If one was to say that he authorized another person to purchase property, and furnished him the money to pay for it at the time, this would not bind the principal to pay for it if the agent had converted the money ; but if the money was returned to him, or the purchase made on credit, and the principal afterwards furnishes the means for payment, he would be bound for the faithlessness of the agent in not applying them."

In the case of *Komorowski* v. *Krundick* (56 Wis., 23), the action was to recover the value of a quantity of wheat sold. TAYLOR, J.,

in delivering the opinion of the court, says : " If the evidence is sufficient to show a sale upon credit to Grist as agent of the defendants, and that the wheat was delivered to the defendants and received by them of Grist, still they would not be liable to the plaintiff unless they received the wheat knowing it had been bought upon credit, or they had received the wheat of Grist knowing they had no funds in his hands at the time sufficient to pay for the same. If they furnished money to their agent sufficient at all times to pay for all the wheat they received from him, they had the right to suppose that all the wheat bought by Grist for them was paid for at the time it was delivered to them, and if he had not in fact paid for it they would only be liable to the seller under the circumstances above stated." (See, also, *Tafft* v. *Baker*, 100 Mass., 68.)

In the case of *Fish* v. *Wood* (4 E. D. Smith, 327), it was held that where an agent buys in his own name without disclosing his principal, but for the benefit of the latter, though within the authority of the agent, and the principal without any notice of the purchase or of the claim of the vendor pays his agent for the goods, he cannot be made liable afterwards to the vendor. In *Jaques* v. *Todd* (3 Wend., 83–94), MARCY, J., in delivering the opinion of the court, says : " Where money is given to the agent or servant to purchase goods for his principal or master and he retains the money and purchases on the credit of his employer, the latter is not liable unless it can be shown that sometimes the agent or servant has been permitted to buy on credit."

In the case of *McCullough* v. *Thompson* (45 N. Y. Supr. Ct., 449), it was held in a sale of goods to an agent who purchases in his own name and to whom the credit is given, the principal is not liable to respond to the vendor for the price of the goods where it appears that the principal has paid the agent for the goods. In the case of *Knapp* v. *Simon* (96 N. Y., 284–288), RUGER, Ch. J., states the rule as follows : " The effect of a purchase of property by an agent who does not disclose the name of his principal at the time of such purchase, is to render the agent personally liable to the vendor for the purchase-price. The agent is under no legal or moral obligation to make such disclosure, and the only consequence of an omission is to create a liability which he might escape by informing

the vendor of the circumstance of his agency and the name of his principal. The vendor may, however, upon discovering the name of the principal in the transaction, also hold him responsible for the price of the property bought, provided he has not in the meantime, in good faith, paid such price to the agent."

We have thus briefly alluded to some of the authorites both in England and this country which bear upon the question under consideration. They are the nearest in point of any that we have been able to discover. From them it appears to us that where an agent buys in his own name, but for the benefit of his principal, without disclosing the name of the principal, the rule is that the principal as well as the agent will be bound, provided the goods are received by the principal, if the agent in making the purchase acted within his power as agent; but that this rule is subject to the following limitations and exceptions: First. The purchase of the agent must be within the power conferred upon him by his principal, or it must be shown that the principal has subsequently ratified his acts. Second. If the principal furnished the agent with the money with which to make the purchase before the purchase, and the agent should, without his knowledge, purchase the property upon credit without disclosing his principal, that the principal will not be bound; and, Third. Where the purchase has been made by the agent upon credit, authorized by the principal, but without disclosing his name, and payment is subsequently made by the principal to the agent in good faith before the agency is disclosed to the seller, then the principal would not be liable. In the case under consideration it appears that the defendants authorized Smith to purchase the hides for them ; that they advanced the money to him with which to make the purchases they had authorized. The plaintiff, in selling the hides to Smith, sold to him upon his individual credit and promise to pay. The case therefore appears to us to be within the exceptions to the rule mentioned, and it consequently follows that the plaintiff is not entitled to recover.

Judgment reversed and a new trial ordered, with costs to abide the event.

SMITH, P. J., BARKER and BRADLEY, JJ., concurred.

Judgment reversed and a new trial ordered before another referee, with costs to abide the event.